IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUENTIN ALLEN,<br>　　　　　　　　Plaintiff,<br>　　v.<br>KILOLO KIJAKAZI, COMMISSIONER<br>OF SOCIAL SECURITY,[1]<br>　　　　　　　　Defendant, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>NO. 20-2016 |

Henry S. Perkin, M.J.　　　　　　　　　　　　　　　　　　　　September 30, 2021

## MEMORANDUM

　　Plaintiff, Quentin Allen ("Plaintiff"), brings this action under 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g) by reference, to review the final decision of the Commissioner of Social Security ("Defendant"), denying his claim for supplemental security income ("SSI") provided under Title XVI of the Social Security Act ("the Act"). 42 U.S.C. §§ 1381-1383f. Subject matter jurisdiction is based upon section 205(g) of the Act. 42 U.S.C. § 405(g). Presently before this Court is Plaintiff's Brief and Statement of Issues in Support of Request for Judicial Review, Defendant's Response to Request for Review of Plaintiff, and Plaintiff's Reply Brief. For the reasons that follow, the relief sought by Plaintiff will be granted and the case remanded for further administrative proceedings.[2]

**I.　　PROCEDURAL HISTORY**

　　Plaintiff filed an application for Supplemental Security Income benefits ("SSI") on January 5, 2017, alleging disability beginning December 28, 2014 due to heart problems, diabetes mellitus, low blood pressure and a right pointer finger amputation. (Tr. 142.) The claim was denied initially and Plaintiff filed a timely written request for a hearing before an

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

[2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. 636(c). *See* Standing Order, In RE: Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); ECF No. 3 ¶ 2; No. 5.

Administrative Law Judge ("ALJ").  A hearing was held before ALJ Daniel L. Rubini on November 20, 2018, at which Plaintiff appeared without counsel and testified. (*Id.* at 27-45.)  On March 1, 2019, ALJ Rubini issued an unfavorable decision finding that Plaintiff was not disabled from January 5, 2017 through March 1, 2019.  (*Id.* at 16-23.)  Plaintiff timely filed a Request for Review of Hearing Decision with the Appeals Council, and the Appeals Council denied Plaintiff's request for review, making ALJ Rubini's decision the final decision of the Agency.  (*Id.* at 1-3.)  Plaintiff filed a counseled appeal in this Court, and Plaintiff, through counsel, consented to the jurisdiction of this Magistrate Judge.

## II.     AGE, EDUCATION, WORK EXPERIENCE

Plaintiff, born in July 1975, was forty-one years old on his application date.[3] Plaintiff is right-handed and he suffered a severe injury to his right hand when he was fifteen, causing him to lose the top two joints of his pointer finger.  He completed the 11th grade in school. (Tr. at 143.) He previously worked from 2009 to 2012 on a conveyor belt line as a packager and also used forklifts and power jacks to move and shrink wrap pallets at that job.  (Tr. 37.) He was incarcerated in 2013 for simple assault and again in 2017 for approximately one month for possession of marijuana, a violation of his probation.  (Tr. 34-35, 108.)  In 2015, he worked one day at a warehouse loading and unloading trucks, but his probation officer did not approve of the job because of its distance from Plaintiff's residence.[4]  (Tr. 143.)

In 2015, Plaintiff suffered a sudden cardiac arrest and underwent a double bypass and subsequent cardiac grafting.  (Tr. 283.)  He had reportedly smoked a pack of cigarettes every day for twenty-six years.  (*Id.*)  While hospitalized, Plaintiff was also diagnosed with type 2 diabetes mellitus.

At the time of his 2017 application, Plaintiff mowed the lawns of his neighbor and his girlfriend and performed odd jobs to earn money.  (Tr. 100-102.) At the time of the November 2018 ALJ hearing, Plaintiff had been employed full-time for approximately six months at a fence

---

[3]     Because Plaintiff qualified as a "younger person" between the ages of 18 and 49 under the regulations, his age is not considered a significant impediment to adapting to new work situations.  20 C.F.R. § 416.963(b)(2000). The Court must "cautiously scrutinize the employment prospects of so young an individual before placing [him] on the disability rolls."  *Lockley v. Barnhart*, No. 05-5197, 2006 U.S. Dist. LEXIS 29722, at *2 n.1 (E.D. Pa. May 16, 2006) (Baylson, J.) (quoting *McLamore v. Weinberger*, 530 F.2d 572, 574 (4th Cir. 1976)).

[4] Respondents misread this entry as Plaintiff worked from 2015 to 2018. Plaintiff identified the warehouse job on his Disability Report as lasting from 2015 to 2015 and he testified at the ALJ hearing that this employment lasted only one day. (Tr. 143.)

and ironworks company in the sandblasting room. (*Id.* at 32-33.)  At that job, he estimated carrying an average of fifty pounds and a maximum of seventy-five pounds. (*Id.*)  He reported that he sometimes has difficulties performing the job because his right hand "will lock up on me, depending on the weather, and my breathing [despite wearing an oxygen-supplied helmet]. (*Id.* at 34.)

In his initial application and also at the November 2018 ALJ hearing, Plaintiff stated that he lives with his cousin and her two children, ages twenty and twenty-two, and he pays his cousin rent and contributes food stamps to the household. (*Id.* at 32.)  Plaintiff testified that he does not cook and grocery shops approximately one time per month, but he does his own laundry, sweeps, dusts, picks up and vacuums. (*Id.* at 42.)  He has a driver's license but it was suspended for tickets, so to commute to work he walks or takes the bus. (*Id.*)

In addition to reviewing the transcript of the administrative hearing and the administrative decision in this case, this Court has independently and thoroughly examined all of the medical records and disability reports. We will not further burden the record with a detailed recitation of the facts. Rather, we incorporate the relevant facts in our discussion below.

### III. ALJ DECISION

The ALJ found that, during the limited relevant time period from January 2017 through March 2019, Plaintiff had severe impairments of coronary artery disease, status-post double coronary artery bypass grafting, type II diabetes mellitus, and a history of traumatic right index finger amputation and that Plaintiff's hypertension and obesity are non-severe impairments. *Id.* at 19. The ALJ further found Plaintiff's sleep apnea to be a non-medically determinable impairment. *Id.* Based on these findings, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC")[5] to perform a limited range of medium work as defined in 20 C.F.R. § 416.967(c).[6] (Tr. 19.) Specifically, the ALJ found that Plaintiff could only occasionally handle

---

[5] Residual functional capacity measures what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and he has done in the past despite the severe impairment - if he can, he will be found not disabled; and (5) if the claimant cannot perform his past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether he can perform other work which exists in the national economy. *See* 20 C.F.R. § 404.1520(b)-(f).

[6] To determine the physical exertion requirements of work in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the Dictionary of

and finger with his right hand and could only have occasional exposure to pulmonary irritants. *Id.* The ALJ further found that Plaintiff could never feel with his right hand, and that he could never climb ladders, ropes, or scaffolds. *Id.* The ALJ also determined that Plaintiff could never have exposure to extreme cold, unprotected heights, or moving mechanical parts, and that he could never operate a motor vehicle. *Id.*

The ALJ did not obtain any VE testimony in this case and Plaintiff was unrepresented before the ALJ. Based on the ALJ's determination of the effects of Plaintiff's RFC on his ability to perform work, the ALJ used the Medical-Vocational Grids as a guideline and found that occupations existed in the national economy that Plaintiff could perform. (Tr. 22.) Thus, the ALJ found Plaintiff was not disabled at step 5 of the sequential evaluation process. (*Id.*)

## IV.     LEGAL STANDARD.

The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Commissioner's final decision. Any findings of fact made by the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision. *Richardson v. Perales*, 402 U.S. 389, 407 (1971) (quoting *Consol. Ed. Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*,

---

Occupational Titles, published by the Department of Labor. In making disability determinations under this subpart, the following definitions are used:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 416.967.

113 S.Ct. 1294 (1993).  Thus, the issue before this Court is whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence. Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of disability.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984).  The Supreme Court recently reiterated the standard for substantial evidentiary sufficiency "is not high" and it is only "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1).  Each case is evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether she can perform work she has done in the past despite the severe impairment - if she can, she will be found not disabled; and (5) if the claimant cannot perform her past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether she can perform other work which exists in the national economy.  *See id.* § 404.1520(b)-(f).

*Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431-32 (3d Cir. 1999).  The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of his age, education, *work* experience and residual functional capacity. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

V.    **DISCUSSION**.

Disability is not determined merely by the presence of impairments, but rather on the functional restrictions the impairments place on an individual.  *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).  Plaintiff must establish that his impairments result in functional

limitations so severe they precluded her from engaging in any substantial gainful activity. See *Dupkunis v. Celebrezze*, 323 F.2d 380 (3d Cir. 1963); *Gardner v. Richardson*, 383 F. Supp. 1 (E.D. Pa. 1974).

Plaintiff sets forth the following arguments why he contends the ALJ Decision in this case was erroneous. He specifically contends:

1. Remand is required because the ALJ relied on the Medical-Vocational grids and failed to consult a VE in a case where he himself found significant non-exertional limitations in the RFC, in violation of Agency policy and Circuit law. The ALJ further erred in failing to fulfill his duty to assist Plaintiff, an unrepresented claimant, in developing his claim on this issue.

2. Remand is required because the ALJ substituted his own lay opinion for that of several medical opinions in the record. This led directly to an RFC determination that did not accurately reflect all of Plaintiff's functional limitations. Again, the ALJ further erred in failing to fulfill his duty to assist Plaintiff, an unrepresented claimant, in developing his claim on this issue.

Pl. Br., pp. 2-3.

Because Plaintiff was unrepresented at the ALJ hearing, he was owed a "heightened duty of care" by the ALJ to ensure that he had a full and fair opportunity to present his claim. According to the Supreme Court in *Sims v. Apfel*, 530 U.S. 103, 110 (2000), it is the ALJ's responsibility to "investigate the facts and develop the arguments both for and against granting benefits." (emphasis added). This principle is mirrored in the Third Circuit. *Reefer v. Barnhart*, 326 F. 3d 376 (3d Cir. 2003); *Early v. Heckler*, 743 F.2d 1002 (3d Cir. 1984); *Hummel v. Heckler*, 736 F.2d 91, 95 (3d Cir. 1984); *Livingstone v. Shalala*, 614 F. 2d 342 (3d Cir. 1980); *Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979). "When a claimant appears at a hearing without counsel, the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Reefer*, 326 F.3d at 380 (quotation omitted); *see also Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) ("[A]n ALJ must secure relevant information regarding a claimant's entitlement to social security benefits."). Plaintiff contends this principle is particularly critical here because he has a limited 11th grade education.

A reviewing Court must determine whether there was clear prejudice to the claimant or unfairness in the administrative hearing. *Domozik v. Cohen*, 413 F.2d 5, 9 (3d Cir. 1969); *Dobrowolsky, supra*. Defendant notes that the ALJ's duty is to ensure that the evidence is

sufficient to make a benefit determination and to resolve any material conflicts of ambiguities in the evidence. *See* 20 C.F.R. § 416.920b (explaining how disability determinations are made). The ALJ stated:

> I note you're not represented by an attorney here today. Do you intend to go through with today's hearing without representation?
>
> CLMT: Yes, Your Honor.
>
> ALJ: All right. You understand you have rights to representation, at your own expense, possibly from Legal Aid Society for no legal fee, or from referral to a private attorney on a contingent fee basis, that is a percentage of your past benefits due if successful, and no legal fee if not successful. You understand your rights to representation at your own expense?
>
> CLMT: I wasn't too sure I could have somebody represent me, Your Honor. I didn't know that I could have a lawyer or not.
>
> ALJ: Well, all those notices were sent to you.
>
> CLMT: Yes, they were.
>
> ALJ: And along with the telephone numbers and addresses for legal –
>
> CLMT: Yes.
>
> ALJ: -- legal service, the lawyer referral service. You had about a year and a half now to do something about it.
>
> CLMT: Right.
>
> ALJ: Do you wish to go through with today's hearing without representation or not?
>
> CLMT: Yes, I'll go through.
>
> ALJ: Okay. Testimony is taken under oath.

Tr. 30-31. The ALJ accepted the medical records that Plaintiff brought with him to the hearing, stated that they were too numerous for him to then review, but that he would compare all of the records in Plaintiff's file with the records he brought to the hearing and return them to Plaintiff by mail.

7

The ultimate burden of proving disability rests with the claimant. *See* 20 C.F.R. § 416.912 (stating that the claimant must prove disability and furnish medical evidence and other evidence in support of her alleged disability). Although the ALJ has a duty to assist a claimant in developing a full and fair record, *Ventura*, 55 F.3d at 902, he is not required to "search out all the relevant evidence which might be available, since that would in effect shift the burden of proof to the government." *Hess v. Sec'y of Health, Educ. & Welfare,* 497 F.2d 837, 840 (3d Cir. 1974).

Plaintiff notes that there are records that are not mentioned by the ALJ in his decision which cover a twelve month period, from April 10, 2017 to May 23, 2018. These are office notes from James F. McDonald, D.O., Plaintiff's primary care physician, and Progress Notes and hospital records from Temple University Hospital. (Tr. 343-492.) According to the ALJ's findings and the record, Plaintiff did not return to substantial gainful employment ("SGA") until May 23, 2018, leaving a period of 13 months during which the Plaintiff did not engage in SGA, which was required to be fully considered and adjudicated by the ALJ. *See* 20 C.F.R. §§ 416.909, 416.920(b).[7] (Tr. 18, 116-125.) The ALJ did not address medical evidence from that 13 month period. (Tr. 343-492.)

"A district court cannot conduct a *de novo* review of the Commissioner's decision, or reweigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered." *Johnson v. Colvin*, No. 14-828, 2014 WL 6090421, at *1 (W.D. Pa. Nov. 13, 2014); *Schwartz v. Halter*, 134 F. Supp.2d 640, 647 (E.D. Pa. 2001). Thus, where the ALJ has failed to adequately explain in the record his reasons for rejecting or discrediting competent evidence, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Schwartz*, 134 F. Supp. at 648 (citing *Cotter*, 642 F.Supp. at 705). The ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008). The cited records by Plaintiff are relevant to the SGA analysis.

---

[7] "Even if the work you have done [during your alleged disability] was not substantial gainful activity, it may show that you are able to do more work than you actually did. We will consider all of the medical and vocational evidence in your file to decide whether or not you have the ability to engage in substantial gainful activity." 20 C.F.R. § 416.971.

Without any discussion of the records noted by Plaintiff, the ALJ's determination cannot be said to be supported by the "evidence of record" because it is unclear that the ALJ even considered those records in his decision. Accordingly, this case will be remanded for further review of the record and explanation by the ALJ.

This decision does not address Plaintiff's other contentions, that the ALJ relied on the Medical-Vocational grids and failed to consult a VE in a case where he himself found significant non-exertional limitations in the RFC, in violation of Agency policy and Circuit law because reconsideration may impact the ALJ's decision in that regard.

An appropriate Order follows.